UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CARLOS HARDISON                                    CIVIL ACTION

VERSUS                                             NO: 11-2053

ABDON CALLAIS OFFSHORE, LLC                        SECTION: "A" (2)

## ORDER AND REASONS

Before the Court is a **Motion for Partial Summary Judgment (Rec. Doc. 19)**, filed by Defendant Abdon Callais Offshore, LLC ("ACO"). Plaintiff Carlos Hardison has filed an opposition to the motion **(Rec. Doc. 25)**. The motion, scheduled for submission on June 20, 2012, is before the Court on the briefs without oral argument. For the following reasons, the motion is **GRANTED in part and DENIED in part**.

**I.    BACKGROUND**

This case involves an alleged injury to the Plaintiff which occurred while he was employed as a deckhand aboard the M/V Callais Explorer, a vessel owned and operated by Defendant. Plaintiff began his employment with ACO in August 2010. According to his complaint, on or about June 19, 2011, Plaintiff sustained a serious, permanent, and disabling injury to his right foot and right lower extremity when he struck his foot against a milk crate while trying to dismount from an upper bunk on the vessel.

According to Defendant, Plaintiff reported the injury to the vessel's captain, Jim Skillen, on June 22, 2011; he was taken to Blanchard Family Practice Clinic ("the clinic") on June 27, 2011, where he was evaluated and provided with medication. According to the deposition of Vernon Foret, a physician's assistant who treated Plaintiff during his visit to the clinic, Plaintiff

1

did not inform Foret that Plaintiff had diabetes.  Vernon Foret Depo., p. 28.  Foret testified that Plaintiff said that his previous physicians "thought [his] blood sugar was elevated at one time in the past."  When Foret asked Plaintiff, "Did you have diabetes?" Plaintiff allegedly said, "I don't think it was diabetes.  They just said it was like elevated."  Id.  Foret stated that "basically, [Plaintiff] inferred... that he had never taken medicine for diabetes."  Id. at p. 30.  Plaintiff did tell Foret that he had experienced high blood pressure before, and that "he should have been taking blood pressure medications, but he didn't always require them, so he [hadn't] take[n] them since 2008."  Id. at pp. 28-29.

On June 29, 2011, Plaintiff returned to the clinic for follow-up treatment.  Dr. Roger Blanchard took his history and noted that the Plaintiff stated that he was diagnosed with diabetes but had not been taking his medicine since 2008.  Blanchard Depo., p. 21.  Dr. Blanchard further testified that Plaintiff told him that Plaintiff had not checked his blood sugars and had stopped taking medicines on his own.  Id.  Plaintiff allegedly told Dr. Blanchard that he used to be on injectable insulin."  Id.  When Dr. Blanchard checked Plaintiff's blood sugar, he found that it was too high to register on the machine.  Blanchard Depo., pp. 23-24.  According to Dr. Blanchard's testimony, Plaintiff's hemoglobin levels indicated that Plaintiff's blood sugar had been poorly controlled for some time.  Id. at pp. 27-28.  Following Plaintiff's checkup with Dr. Blanchard, ACO informed Plaintiff that he needed to get his blood sugar under control, and Plaintiff returned home.

On July 3, 2011, Plaintiff presented to LSU Medical Center in Shreveport complaining of right foot pain.  He was diagnosed with diabetes with circulatory disorders, ulceration of lower limb, and gangrene and diabetic bone changes.  On July 18, 2011, Plaintiff underwent amputation of the first and second toes.  He continued to have health problems, and on

September 17, 2011, his right leg had to be amputated below the knee. According to Defendant, Plaintiff began receiving maintenance payments from Defendant on July 4, 2011, and continues to receive said payments.

Defendant filed the instant motion 1) to stop maintenance payments to Plaintiff; 2) to establish that Plaintiff is not entitled to cure; and 3) to assert that ACO is entitled to credit for all maintenance payments made to Plaintiff thus far. In making these claims, Defendant relies upon the defense provided by for by the Fifth Circuit's decision in McCorpen v. Central Gulf S.S. Corp, 396 F.2d 547, 548 (5th Cir. 1968).

According to Defendant, the Court should grant ACO's motion because: i) Plaintiff intentionally and willfully concealed his pre-existing and disabling condition; ii) the willful concealment of his prior illness was material to Defendant's decision to hire him; iii) a nexus exists between Plaintiff's pre-existing condition and the alleged injuries that make the basis of this lawsuit; and iv) there are no genuine issues of material fact which would preclude the Court from granting summary judgment. Defendant asks that the motion be granted, that an order be issued that Plaintiff is not entitled to maintenance and cure benefits, and that ACO be awarded/reimbursed in the amount of $8,162.00 paid through May 6, 2012 and any amounts paid subsequent to this date, in addition to all other general and equitable relief.

Plaintiff argues that the McCorpen defense is inapplicable in the instant case, and that summary judgment is improper because there is a question of material fact as to whether Plaintiff "wilfully" or "intentionally" concealed a pre-existing and disabling condition from Defendant.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the

light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." TIG Ins. Co. v. Sedgwick James, 276 F.3d 754, 759 (5th Cir. 2002) (citing Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed .2d 202 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. (citing Anderson, 477 U.S. at 248). The Court must draw all justifiable inferences in favor of the non-moving party. Id. (citing Anderson, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. Id. (citing Fed.R.Civ.P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. Id. (citing SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

### III. DISCUSSION

#### A. Application of the McCorpen Defense

Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel. McCorpen, 396 F.2d at 548. The vessel owner's obligation to provide this compensation does not depend on any determination of fault, but rather is treated as an implied term of any contract for maritime employment. Id. A seaman may recover maintenance and cure even for injuries or illnesses pre-existing the seaman's employment unless that seaman knowingly or fraudulently concealed his condition from the vessel owner at the time he was employed. Id.

A Jones Act employer is entitled to investigate a seaman's claim for maintenance and

cure benefits. Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 171 (5th Cir. 2005) (citing Morales v. Garijak, Inc., 829 F.2d 1355, 1358 (5th Cir. 1987)). An employer is allowed to rely on certain legal defenses to deny these claims, such as the defense that the injured seaman willfully concealed a pre-existing medical condition from his employer. Id. (citing McCorpen v. Cent. Gulf S.S. Corp., 396 F.2d 547 (5th Cir. 1968)). "[W]here the [employer] requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure." Id. at 173 (citing McCorpen, 396 F.2d at 549).

> To establish a McCorpen defense, an employer must demonstrate that:
> 
> (1) the claimant intentionally misrepresented or concealed medical facts;
> 
> (2) the non-disclosed facts were material to the employer's decision to hire the claimant;

and

> (3) a connection exists between the withheld information and the injury complained of in the lawsuit.

Id. at 171 (citing McCorpen, 396 F.2d at 548-49).

In its motion for partial summary judgment, Defendant argues that it is entitled to assert the McCorpen defense to dispense with Plaintiff's claim for maintenance and cure. The Fifth Circuit has held that a seaman's claim for maintenance and cure is properly dismissed if he willfully conceals a pre-existing medical condition that is connected to the alleged injury. Defendant argues that it is entitled to assert the McCorpen defense because Plaintiff intentionally concealed his diabetes and high blood pressure on two pre-employment medical questionnaires, his diagnoses were material to Defendant's decision to hire him, and there is a causal link

between Plaintiff's pre-existing conditions and the alleged injuries that are the basis of this lawsuit.

For the reasons that follow, the Court finds that the <u>McCorpen</u> defense is applicable in the instant case; accordingly, partial summary judgment is appropriate on the issue of maintenance and cure.

          1.      <u>Intentional Misrepresentation</u>

<u>McCorpen</u>'s intentional concealment prong "neither necessarily turns on credibility nor requires a subjective determination." <u>Brown</u>, 410 F. 3d at 175. Rather, this prong "is an essentially objective inquiry." <u>Id.</u> at 174. The Fifth Circuit has specifically held that the "intentional concealment element does not require a finding of subjective intent." <u>Id</u>. "Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information satisfies the 'intentional concealment' requirement." <u>Id.</u> (quoting <u>Vitcovich v. Ocean Rover O.N.</u>, 1997 WL 21205 at *3 (9th Cir. Jan. 14, 1997)(unpublished opinion)).

Plaintiff completed two pre-employment medical questionnaires in September 2010. On the first, he was asked to circle "Y" for "Yes" and "N" for "No" if he "currently" had the symptoms listed on the form or if he had those symptoms "significantly" in the past. Plaintiff circled "N" for diabetes and high blood pressure. On the second questionnaire, which contained a capitalized warning in bold font stating that "[f]ailure to answer truthfully may result in an employee's forfeiture of worker's compensation benefits under R.S. 23.1208.1," he was asked "Are you bothered with or have you ever experienced the following [illnesses or injuries?]" The instructions stated that the applicant must "[a]nswer EVERY item." (Emphasis in original) "Diabetes" was listed second on the questionnaire; next to "Diabetes," Plaintiff checked the box

marked "No." He also checked "No" for "High Blood Pressure."

The record reflects that Plaintiff was in fact diagnosed with diabetes as early as 2002, while he was under the treatment of Dr. Bryan Picou of Natchitoches Medical Specialists, LLC. Plaintiff was a patient of Dr. Picou from May 2002 until July 2008, when Plaintiff relocated to Houston, Texas. Picou Depo., p. 8; Plaintiff Depo., p. 24. Dr. Picou testified that Plaintiff was admitted to the hospital for a kidney problem on May 2, 2002. When Dr. Picou tested Plaintiff's blood sugar on that date, he found it to be abnormally high, which is an indicator of diabetes. Id. at 9. Dr. Picou testified that, at that time, Plaintiff was already on two medications used to treat diabetes, a fact which indicates that Plaintiff was diagnosed with the illness even prior to 2002. Id. at 10. The doctor further testified that, at a follow-up office visit later that month, he and Plaintiff "discussed better control of his diabetes...." Picou Depo., p. 13.

Dr. Picou stated that he saw Plaintiff again in September 2002 for "hypertension and diabetes." Id. at 16. At that point, the doctor prescribed Plaintiff medication to treat his elevated blood pressure. Id. Dr. Picou testified that, during the six-year period he treated Plaintiff, he told Plaintiff "multiple times" to take his medications, check his feet for circulatory problems, and check his blood sugar. Id. at 36. It is abundantly clear from the doctor's deposition testimony that Plaintiff was aware that he had diabetes and high blood pressure and had taken steps to monitor and treat these conditions in the past.

Plaintiff testified that when he moved to Houston, he stopped taking injectable insulin and seeing a doctor, though he continued to check his blood sugar levels. Plaintiff Depo., pp. 24-25. Plaintiff further testified that these actions were his decision, and that he had not been advised by any doctor to stop his insulin regimen. Id. According to Plaintiff, when he checked his blood sugar while living in Houston, it showed that he did not need any insulin. Id. Plaintiff

stated that he has "never denied having diabetes," but admitted that he "circled no for diabetes" on the questionnaires. Id. at p. 29. He said that he "might have made a mistake" in filling out the forms. Id.

This Court finds that Plaintiff intentionally concealed his condition from Defendant; the record reveals that Plaintiff knew that the information that he submitted in his job applications was not correct, because he had been diagnosed with diabetes for at least eight years prior to filling out the application, had been treated with injectable insulin, and checked his blood sugar on a regular basis. Plaintiff was also aware that he had experienced high blood pressure, and had been treated for this condition with medication in the past, but failed to disclose this fact on the questionnaires.

        2.      Materiality

Defendant contends that Plaintiff's misrepresentation was material to its hiring decision. According to the Fifth Circuit, "[t]he fact that an employer asks a specific medical question on an application, and that inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." Brown, 410 F.3d at 175.

Plaintiff was required to complete two medical questionnaires specifically designed to elicit information about pre-existing injuries and health problems. According to the sworn declaration of William Foret, President and CEO of Defendant ACO, Plaintiff's position as a deckhand required significant physical activity and long periods offshore wherein food supplies have to be purchased for the employees, including those with special dietary needs. Foret Depo., p. 1. Foret further testified that had ACO learned of Plaintiff's significant medical history of diabetes, which can lead to circulatory disorders and possible infections, it would have "inquired

further into [Plaintiff's] employability." Id. at p. 2.  The Court therefore finds that the second factor of the McCorpen test is met; Plaintiff's history of insulin-dependent diabetes and high blood pressure are rationally related to his physical ability to perform his job duties, and Plaintiff's truthful disclosure of his pre-existing conditions would have materially affected Defendant's decision to hire him.

    3.    Causation

"Case law reflects that even an intentional misrepresentation of medical facts which would have been material to the employer's hiring decision is insufficient to overcome an obligation of maintenance and cure, barring a connection between the withheld information and the injury which is eventually sustained."  Brown, 410 F.3d at 175 (quoting Howard v. A.S.W. Well Serv. Inc., No. 89-2455-L, 1991 WL 365060, *2 (W.D.La. Dec. 5, 1991)).  In establishing the requisite causal relation, "there is no requirement that a present injury be identical to a previous injury.  All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage."  Id. at 176 (quoting Quiming v. Int'l Pac. Enters., Ltd., 773 F.Supp. 230, 236 (D. Haw. 1990); McCorpen, 396 F.2d at 549).  Plaintiff does not contest this third factor of the McCorpen test, and the Court finds that it is met.

    **B.**    **Reimbursement of Maintenance Payments**

Defendant further seeks reimbursement in the amount of $8,162.00 for maintenance and cure benefits paid through May 6, 2012, and for any amounts paid subsequent to this date.  Defendant does not cite any statute or case law in support of its demand.  It should be noted from the outset that very few courts in the country have addressed the issue of restitution of maintenance and cure payments.  Boudreaux v. Transocean Deepwater, Inc., 2011 WL 5025268 at *3 (E.D.La., Oct. 20, 2011)(citing David W. Robertson & Michael F. Sturley, *Is an Employer*

*Who Pays Undeserved Maintenance or Cure Entitled to Restitution*? 35 TLNMLJ 493, 558 (2011)).  The Fifth Circuit in Patterson v. Allseas, USA, et al., expressed its unease with restitution of maintenance and cure when it declined to decide it as a "difficult *res nova* issue" in an unpublished opinion.  Id. (citing Patterson v. Allseas USA, et al., 145 Fed.Appx. 969, 971, 2005 WL 2055879 (5th Cir. 2005)(unpublished opinion)).  In that case, an employer counterclaimed for recovery of maintenance and cure payments based on its McCorpen defense.  However, the district court found that the defendant failed to prove the elements of McCorpen.  The Fifth Circuit on rehearing affirmed the dismissal of the counterclaim based on a factual finding that the employer failed to establish the McCorpen defense, and declined to decide the legal issue of whether a cognizable restitution claim existed in the record before it.  Id. (citing Patterson, 145 Fed. Appx. at 971).

The Ninth Circuit is the only federal appellate court that has thus far allowed restitution of maintenance and cure benefits to an employer who successfully established the McCorpen defense.  In Vitcovich v. Ocean Rover O.N., an unpublished panel opinion, the Ninth Circuit held upheld a counterclaim for reimbursement of maintenance and cure payments without discussion of the underlying issue pertaining to the counterclaim's viability.  Vitcovich, 1997 WL 21205 at *3.  In contrast, other courts have dismissed actions to recover maintenance and cure claims "based on the United States Supreme Court's unwillingness to impose the burden of restitution upon employees."  See e.g. Kirk v. Allegheny Towing Inc., 620 F.Supp 458, 461 (W.D.Pa. 1985)(denying a counter-claim against a non-seaman to recover maintenance and cure benefits).

Recently, Judge Lemelle of this Court recognized the viability of extending the McCorpen defense to a right of action for restitution of maintenance and cure payments under

10

limited circumstances.  Dolmo v. Galliano Tugs, Inc., 2011 WL 6817824 at *2 (E.D.La., Dec. 28, 2011)(citing Boudreaux, 2011 WL 5025268).  In so doing, Judge Lemelle declined the defense's invitation to apply Louisiana law to the counterclaim, and noted that "willful assertion of a frivolous claim would also warrant financial sanctions against the Plaintiff himself."  Boudreaux, 2011 WL 5025268 at *6.

However, the Court in Boudreaux specifically stated that the facts of that case were "unique because the seaman not only failed to disclose his condition during the initial stages of employment but he also concealed it by failing to timely disclose it to his employer and his own attorney until years later, and then only on the eve of the ruling on the McCorpen issue.  This seaman's inactions were more than unreasonable; they were intentionally done and void of good faith."  Id.  Judge Lemelle found that under such "special circumstances," a claim for restitution was appropriate and did not run afoul of traditional maritime policies.   Id.

By contrast, in Dolmo v. Galliano Tugs, Inc., Judge Berrigan dismissed a defendant's counterclaim for restitution of maintenance and cure benefits, finding that allowing such a counterclaim would "seriously undercut[] the historical rationale and the very deference the admiralty gives its wards of the court."  Dolmo, 2011 WL 6817824 at *2.  The Court in Dolmo analyzed the earlier ruling in Boudreaux, but also noted that at least one Louisiana appellate court's recent research revealed a lack of authority "that a cause of action exists for an employer to claim restitution of maintenance and cure payments from a seaman."  Id. at *2 (quoting Cotton v. Delta Queen Steamboat Co., Inc., 36 So.2d 262, 270 (La.App. 4th Cir. 2010)).  Judge Berrigan shared the state court's concern, as does this Court.

Weighing the overall lack of precedent justifying an award of restitution with the potential that such an award would cause undue hardship to the seaman, the Court finds that it is

inappropriate to order Plaintiff to repay funds which have already been distributed by Defendant for his maintenance and cure. This portion of Defendant's motion is therefore denied.

### IV.   CONCLUSION

The Court finds, as a matter of law, that the McCorpen defense applies in the instant case. Plaintiff is not entitled to cure, and Defendant is entitled to stop maintenance payments. However, the Court holds that Defendant is not entitled to reimbursement of all maintenance payments made to Plaintiff thus far.

Accordingly,

Defendant's **Motion for Partial Summary Judgment (Rec. Doc. 19)** is hereby **GRANTED in part and DENIED in part**. Defendant may cease maintenance payments to Plaintiff, who is not entitled to cure. However, Defendant is not entitled to an award from Plaintiff for past maintenance and cure payments in the amount of $8,162.00 paid through May 6, 2012 and any amounts paid subsequent from this date.

This 12th of July, 2012.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE